United States District Court
Southern District of Texas
**ENTERED**
May 13, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GEOPHYSICAL SERVICE INCORPORATED, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-2766 |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is a motion to dismiss filed by defendant ConocoPhillips Company ("Conoco"). Dkt. 13. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

## I. BACKGROUND

Plaintiff Geophysical Service Incorporated ("GSI") is a Canadian company that provides seismic data services to the oil and gas industry. Dkt. 1. GSI asserts that this seismic data is confidential and proprietary to GSI and that it endeavors to maintain the secrecy of seismic data to protect it from disclosure to GSI's competitors. *Id.* GSI contends that it owns seismic data that was recorded and created offshore of Newfoundland and Labrador, Canada, in surveys in the Atlantic Ocean off the East Coast in 1972 and in Nova Scotia in 1984 ("GSI Seismic Materials"). *Id.* The GSI Seismic Materials are stored on paper, microfiche, or mylar. *Id.* GSI also stores all of its seismic data in digital form in a database. *Id.* GSI contends that the GSI Seismic Materials are protectable by copyright. *Id.*

According to GSI, it has been required to submit its seismic materials to Canadian regulatory boards including the Canada-Nova Scotia Offshore Petroleum Board ("CNSOPB"). *Id.* The

CNSOPB was created pursuant to Canada Nova Scotia Offshore Atlantic Accord Implementation Act, S.C. 1988, c. 28.  *Id.*  The Implementation Act gave the CNSOPB authority to implement regulations "for the purposes of safety, the protection of the environment, and accountability as well as for the production and conservation of petroleum resources."  Dkt. 13, Ex. E-2 § 153 (Canada Nova Scotia Offshore Atlantic Accord Implementation Act, S.C.).  GSI claims that the Nova Scotia Offshore Petroleum Geophysical Operations Regulations, N.S. Reg. 191/95 (SOR/95-144) required GSI to submit a copy of the GSI Seismic Materials on a confidential basis.  Dkt. 1.  Conoco contends that the regulatory boards are authorized to freely disseminate data to third parties after ten years. Dkt. 13.

In 2003, a Canadian trial court issued a decision in a case involving GSI as the "applicant" and the chairperson of the National Energy Board as the "respondent."[1]  Dkt. 13, Ex. B.  The case involved three applications brought by GSI under the Canadian Access to Information Act ("ATIA"). *Id.*  The applications were against various boards, including the CNSOPB, that had refused GSI's information requests for the names and addresses of third parties who had requested access to information that GSI had provided to the boards.  *Id.*  The CNSOPB had refused to provide the information, stating that the information was privileged and could not be disclosed without written consent of the parties who requested the information.  *Id.*  The Canadian trial court concluded that GSI "was entitled to disclosure . . . of the names of those who requested of a Board the release of information or data provided to that Board by [GSI] and the link between each such requester and the data requested."  *Id.*

---

[1]  The court takes judicial notice of the Canadian court opinions that Conoco has submitted. *See* Fed. R. Evid. 201.

GSI contends that it requested disclosure under the ATIA from the CNSOPB of any GSI seismic information released to Conoco on or about September 18, 2012, and again on or about July 24, 2013.  Dkt. 1 & Exs. A–B.  The CNSOPB's responses to GSI's ATIA requests indicate that Conoco had previously requested and received the GSI Seismic Materials.  Dkt. 1, Exs. A–B.  The CNSOPB sent the GSI Seismic Materials to a copy service that copied and shipped the materials to Conoco in Houston, Texas.  *Id.*  The complaint does not indicate where the copy service was located, but an invoice attached to the complaint demonstrates that at least some of the copies were made in Canada.  *Id.*; Dkt. 1, Ex. A.

GSI contends that it was unaware that Conoco had obtained copies of the GSI Seismic Materials until on or after September 23, 2013.  *Id.*  GSI argues that Conoco knew it was not authorized to obtain GSI Seismic Materials from any source other than GSI and that had Conoco properly licensed the materials, it would have been required to pay GSI a licensing fee in excess of $500,000.  *Id.*

On November 26, 2013, the Supreme Court of Nova Scotia heard arguments on a motion brought by GSI in an "application" in which GSI challenged the CNSOPB's "authority to make certain Regulations (the 'Regulations') pertaining to the collection and storage of seismic data generated by private companies."  Dkt. 13, Ex. A.  The court noted that Nova Scotia passed the Canada – Nova Scotia Offshore Petroleum Resources Accord Implementation (Nova Scotia) Act, S.N.S. 1987, c.3 (the "Nova Scotia Act") in 1987.  *Id.*  Then, in 1988, the Canadian federal government passed the Canada – Nova Scotia Offshore Petroleum Resources Accord Implementation Act, S.C. 1988, c. 28 (the "Federal Act").  *Id.*  GSI challenged parallel regulations within the Nova Scotia Act and the Federal Act as *ultra vires*.  *Id.*  The challenged regulations require companies like GSI to obtain a license, and the regulations delegate authority to the CNSOPB to determine the

licensing requirements.  *Id.*  The court found that "the seismic operations performed by [GSI were] part of [the] overall scheme for exploration and development of Nova Scotia's offshore petroleum resources" and that the "data and information requirement[s] of the Board [were] an integral part of and consistent with the overall purpose, objective and scheme of the Acts and the Regulations."  *Id.* The court held that "the impugned Regulations are *vires* and are part of the overall legislative and regulatory scheme of the Acts" and that the "fact that the information supplied by [GSI] to the [CNSOPB] for many years, pursuant to authorizations and upon agreed terms and conditions, is no longer confidential are the rules of the industry of Nova Scotia" and that these rules are "the 'governing authority's rule' and they are enabled by the governing statutes."  *Id.*  The court pointed out that GSI knew the rules when it "undertook to participate in this exploration more than a decade ago."  *Id.*

GSI also filed twenty-five actions in Alberta, Canada against various Canadian petroleum boards, oil and gas companies,[2] seismic companies, and copying companies, and Canadian Chief Justice Wittman took over case management of these actions in April 2015 and ordered a trial on two common issues: (1) What is the effect of the Regulatory Regime on GSI's claims? and (2) Can [Canadian] copyright subsist in seismic material of the kind that are the subject matter of GSI's claims?  Dkt. 26, Ex. 1 (*Geophysical Service Incorporated v. Encana Corporation, et al.*, 2016 ABQB 230, 61).  The Court of Queen's Bench of Alberta issued an opinion in those cases on April 21, 2016.  *Id.*  The court held that "GSI has full [Canadian] copyright and other proprietary rights over its seismic data, but the Regulatory Regime applies to the extent it conflicts with the ***Copyright Act***;

---

[2]  ConocoPhillips Canada Resources Corp., Canadian Natural Resources Limited MGM Energy Corp. (one company) was a defendant in this recent Canadian case.  ConocoPhillips Company was not.  *See* Dkt. 25, Ex. 1, Schedule A.

the Regulatory Regime, in effect, creates a compulsory license over the data in perpetuity after the expiry of the confidentiality or privileged period." *Id.* The court determined that "there is nothing unlawful [under Canadian law] about [the oil and seismic companies] accessing or copying the information from the Boards." *Id.*

GSI filed this lawsuit on September 22, 2015. Dkt. 1. It asserts the following claims against Conoco: (1) direct copyright infringement in violation of 17 U.S.C. § 106; (2) contributory copyright infringement in violation of 17 U.S.C. § 106; (3) unjust enrichment; (4) trade secret misappropriation; and (5) misappropriation of trade secrets, conversion, or theft in violation of the Texas Theft Liability Act, Texas Penal Code section 31.03. *Id.* Conoco filed a motion to dismiss all claims, arguing that (1) the Act-of-State Doctrine requires dismissal; (2) GSI is collaterally estopped from challenging the CNSOPB's authority to disseminate the data; (3) the CNSOPB was authorized to disseminate the data; (4) the contributory infringement claims must be dismissed because the Copyright Act does not apply extraterritorially; (5) all of GSI's claims are time-barred; and (6) the direct copyright infringement claim is not plausible. Dkt. 13. Conoco alternatively argues that GSI lacks standing to assert its claims. *Id.* The motion is now ripe for disposition.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by

5

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (citations omitted).  And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 1959.

## III. ANALYSIS

The court will address, *seriatim*, Conoco's arguments that (1) GSI's contributory copyright infringement claim must be dismissed because U.S. copyright law does not apply extraterritorially; (2) all claims except the direct copyright infringement claim should be dismissed under the act of state doctrine; (3) the doctrine of collateral estoppel bars all of GSI's claims except the direct infringement claim; (4) all of GSI's claims are barred by the applicable statute of limitations; (5) GSI lacks standing to sue; and (6) GSI's direct copyright infringement claim should be dismissed because GSI fails to state a claim for which relief can be granted.  While some of GSI's claims fail under more than one theory, the court addresses multiple grounds in an abundance of caution.  The court will conclude by addressing an alternative request made by GSI that the court stay this case pending the outcome of a recent case in Canada where the judge was asked to determine whether the Canadian government had the power to pass the Implementation Act and regulations, whether GSI could be required to give its seismic materials to the CNSOPB, and whether the materials had to be returned to GSI.  Dkt. 19.

6

## A.    Extraterritoriality

Conoco asserts that GSI's contributory infringement claim must be dismissed because the U.S. Copyright Act does not apply extraterritorially. Dkt. 13. Conoco points out that GSI has not pled any act of direct infringement that occurred within the United States and argues that there can be no contributory infringement if there is no direct infringement within the United States. *Id.* GSI contends that Conoco solicited the CNSOPB from the United States to make copies and distribute them to the United States and that, regardless of where the CNSOPB made copies, Conoco is liable for contributory infringement under the "predicate acts doctrine" because Conoco requested copies and received copies in the United States. Dkt. 19. Additionally, GSI argues that the CNSOPB's distribution of GSI's Seismic Materials crossed the border and therefore occurred in both places. *Id.*

The Copyright Act "does not expressly render anyone liable for infringement committed by another," but "secondary liability emerged from common law principles and [is] well established under the law." *Metro-Goldwyn-Mayer Studios, Inc. v. Grockster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764 (2005) (quoting *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434, 104 S. Ct. 774 (1984)). "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Id.* "'[T]here can be no contributory infringement without a direct infringement.'" *Jaso v. Coca Cola Co.*, 537 F. App'x 557, 560 (5th Cir. 2013) (per curium) (quoting *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004)).

"'[I]n general, United States copyright laws do not have extraterritorial effect [and] infringing actions that take place entirely outside the United States are not actionable.'" *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1092 (9th Cir. 1994) (en banc) *(*quoting *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1986) (overruled in *Subafilms*)); *see also, e.g.*, *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[F]ederal copyright law has

7

no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." (citing *Subafilms* and *Update Art*)); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("It is well established that copyright laws generally do not have extraterritorial application."); *Illustro Sys. Int'l, LLC v. Int'l Bus. Mach. Corp.*, No. 3:06-cv-19690-I, 2007 WL 1321825, at *13 (N.D. Tex. May 4, 2007) (noting that *Subafilms*' rule that "extraterritorial acts of infringement do not violate federal copyright rule" is the majority rule and that two district court opinions criticizing *Subafilms* (*Expediters* and *Curb*) were the "distinct minority"). *But see Expediters Int'l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468 (D.N.J. 1998) (holding that, under Section 106 of the Copyright Act, authorizing the copying extraterritorially constitutes infringement because allowing "an entity to curtail [the copyright owner's rights] by merely directing its foreign agent to do its 'dirty work' would be to hinder the deterrent effect of the statute and to thwart its underlying purpose"); *Curb v. MCA Records, Inc.*, 898 F. Supp. 586 (M.D. Tenn. 1995) (disagreeing with the *Subafilms* court's interpretation of Section 106). If there is no direct infringement in the United States, then there can be no contributory infringement. *See Subafilms*, 24 F.3d at 1092 ("[T]here could be no liability for contributory infringement unless the authorized or otherwise encouraged activity itself could amount to infringement.").

Some courts hold that if part of an act of infringement occurs in the United States, such as importing an infringing work, then the parties contributing to the infringement may be liable under U.S. copyright law. *See Rhapsody Sols., LLC v. Cryogenic Vessel Alternatives, Inc.*, No. H-12-1168, 2013 WL 820589, at *7 (S.D. Tex. Mar. 5, 2013) (Werlein, J.) (collecting cases); *Yesh Music v. Lakewood Church*, No. 4:11-cv-03095, 2012 WL 524187, at *9 (S.D. Tex. Feb. 14, 2012) (Ellison, J.) (noting a distinction between purely extraterritorial conduct and "conduct that crosses borders"). Mere authorization in the United States does not appear to be considered a substantial enough act

within the United States to be "part of an act of infringement."[3]  *See Rhapsody Sols., LLC*, 2013 WL 820589, at *7 (citing *Subafilms* and noting that it held that when the authorization to copy a copyrighted work came from the United States but the copying occurred outside of the United States, no infringement took place).  But violation of one of the exclusive rights enumerated in the Copyright Act within the United States is actionable.  5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 17.03[A], at 29 (2013).  The exclusive rights include the right to (1) reproduce the copyrighted work in copies or phonorecords; (2) prepare derivative works based upon the copyrighted work; (3) distribute copies or phonorecords of the copyrighted work to the public; (4) perform the copyrighted work (if it is literary, musical, dramatic, etc.); (5) display the copyrighted work (if it is literary, musical, dramatic, graphic, etc.); and (6) perform the copyrighted work publicly by means of a digital audio transmission.  17 U.S.C. § 106.

Conoco relies on *Geophysical Services, Inc. v. TGS-Nopec Geophysical Services*, No. 14-1368, 2015 WL 6869733 (S.D. Tex. Nov. 9, 2015) (Rosenthal, J.) (hereinafter "*TGS-Nopec*") for its argument that the court should dismiss the contributory infringement claim because the Copyright Act does not apply extraterritorially.  In *TGS-Nopec*, Judge Rosenthal considered whether to dismiss a case similar to this case in which GSI sued TGS-Nopec Geophysical Services ("TGS") after the CNSOPB provided copies to TGS in response to an information request of seismic lines that GSI had prepared.  2015 WL 6869733, at *2.  The data was over ten years old and no longer subject to a ten-

---

[3]  According to *Nimmer on Copyrights*, "the act of authorizing in Taiwan such unlicensed reproductions in the United States constitutes a violation of the Copyright Act, making the [entity authorizing the reproduction] liable under U.S. law. . . . Conversely, the act of authorizing in Los Angeles a reproduction in Sweden does not derogate the copyright owner's exclusive rights to reproduce the work in the United States, and hence, is not violative of the Copyright Act; its impact will be gauged wholly under Swedish copyright law."  3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[D][2], at 131 (2013).

year confidentiality period imposed by CNSOPB regulations.  *Id.*  When providing the information, the CNSOPB stated that it made no representation regarding the existence of trademarks or copyrights.  *Id.*  GSI alleged that TGS used GSI data to prepare its own seismic lines and then sold licenses to those lines without referring to GSI's copyright.  *Id.* at *3.  GSI asserted a claim for contributory infringement by requesting copies and direct infringement by giving copies to third parties or creating derivative works.  *Id.*  GSI additionally alleged that TGS infringed by licensing these lines and distributing copies without including GSI's copyright information.  *Id.*  GSI had originally sued TGS in Canada but discontinued prosecution to file suit in the United States.  *Id.*

The court held that the allegations that TGS directly infringed on GSI's copyright by copying GSI's lines and sending them to others without including the copyright information were conclusory and speculative.  *Id.* at *6.  With regard to contributory infringement, the court determined that in order to state a claim for contributory infringement, there must be an allegation that an act of direct infringement occurred within the United States because the Copyright Act does not apply extraterritorially.  *Id.* at *7.  The court noted that the complaint alleged that the CNSOPB copied and distributed GSI's copyrighted materials in Canada, not in the United States.  *Id.* at *8.

Here, Conoco asserts that any action taken by the CNSOPB was taken in Canada and that the CNSOPB therefore did not violate U.S. copyright law.  Dkt. 13.  GSI argues that an infringement determination will not be wholly extraterritorial as, according to the complaint, the CNSOPB sent the infringing works across the border into the United States in violation of GSI's distribution right.  *Id.* Conoco argues that mailing the data to the United States does not constitute an act *within* the United States, so U.S. copyright law does not apply.  *Id.* (citing *TGS-Nopec*, 2015 WL 6869733, at *7 and *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994)).

Clearly, the CNSOPB is located in Nova Scotia, Canada, and it kept the GSI Seismic Materials in Canada. In *TGS-Nopec*, the court noted that GSI alleged that the CNSOPB "copied and distributed [the] copyrighted material in Canada, not in the United States." 2015 WL 6869733, at *8. Here, likewise, the CNSOPB's act of providing the data occurred in Canada. *See Subafilms*, 24 F.3d at 1096 (noting that Congress had not chosen to "alter the preexisting extraterritoriality doctrine" that infringing acts taking place outside of the United States are not actionable even when Congress expanded the "'extraterritorial' application of the Act by declaring that the unauthorized importation of copyrighted works constitutes infringement even when copies lawfully were made abroad." (citing 17 U.S.C.A. § 602(a))). However, mailing copies to the United States seems to equate to distributing materials in the United States, which is a violation of the exclusive rights under 17 U.S.C. § 106. While the court is not convinced that merely requesting the copies in the United States is a sufficient predicate act in the United States that U.S. copyright law should apply, the court is concerned that mailing the copies to the United States sufficiently crosses the border such that U.S. copyright law should apply.[4] *Cf. Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) (finding that distribution (by selling) of a copyrighted product to customers in the United States was within the reach of the U.S. Copyright Act); *L.A. News Serv. v Conus Commc'ns Co. Ltd. P'ship*, 969 F. Supp. 579, 583 (C.D. Cal. 1997) (holding that an act of infringement occurred within the territorial

---

[4] The court notes that in *TGS-Nopec*, GSI did not assert that TGS unlawfully imported copies of the GSI Seismic Materials. GSI requested leave to amend to add this assertion, the court denied leave to amend, finding that even if GSI had asserted that claim, it would have to be dismissed under the first-sale doctrine. *See TGS-Nopec*, 2015 WL 6869733, at *9. The first-sale doctrine allows "the owner of a particular copy or phonorecord lawfully made under [the U.S. Copyright Act], or any person authorized by such owner . . . to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. § 109; *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1354–55 (2013). In the instant case, there is inadequate briefing on the first-sale doctrine, and the court therefore expresses no opinion as to whether the first-sale doctrine applies.

boundaries of the United States when a Canadian broadcaster transmitted infringing material from locations in Canada that were displayed in the United States); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 17.03[A], at 28–29 (2013) (discussing the distinction "between purely extraterritorial conduct, which itself is not actionable, and conduct that crosses borders, so that at least a part of the offense takes place in the United States."). However, the court need not decide this issue today because even if U.S. copyright law applies when a company mails infringing copies to the United States, in this case the court cannot find contributory infringement under the act of state doctrine.

**B.     Act of State Doctrine**

Conoco argues that the act of state doctrine requires dismissal of GSI's contributory infringement, trade secret misappropriation, unjust enrichment, and conversion claims because each of these claims requires that GSI prove that the CNSOPB did not have authority to release the GSI Seismic Materials.  Dkt. 13.  GSI argues that the act of state doctrine does not apply because the CNSOPB is not equivalent to the Canadian government and, regardless, this case is not about whether the CNSOPB sanctioned copyright infringement; it is about the confidentiality of GSI's works. Dkt. 19.  GSI further contends that a finding of contributory infringement does not require a finding of direct infringement by the CNSOPB.  *Id.*

The act of state doctrine "limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts."  *Walter Fuller Aircraft Sales, Inc. v. Republic of Phil.*, 965 F.2d 1375, 1387 (5th Cir. 1992).  The relief sought or defense interposed would contravene the doctrine if it were to require "a court of the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405, 110 S. Ct. 701 (1990).

"The act of state doctrine serves to enhance the ability of the Executive Branch to engage in the conduct of foreign relations by preventing courts from judging foreign public acts." *Walter Fuller Aircraft Sales, Inc.*, 965 F.2d at 1387. The burden of establishing the applicability of the doctrine lies with the party asserting that the doctrine applies. *Hond. Aircraft Registry, Ltd. v. Gov't of Hond.*, 129 F.3d 543, 550 (11th Cir. 1997); *Liu v. Rep. of China*, 892 F.2d 1419 (9th Cir. 1989) (citing *Alfred Dunhill of London, Inc. v. Rep. of Cuba*, 425 U.S. 682, 694–95 (1976) (disagreeing that the respondent had met its burden of establishing the act of state defense)).

### 1.    Contributory Infringement

Conoco asserts that the contributory infringement claim requires that the CNSOPB directly infringed the copyright and that the tort claims require proof that the CNSOPB did not have authority to release the GSI Seismic Materials. *Id.* Conoco points out that in *TGS-Nopec*, the court noted that even if extraterritoriality principles did not preclude the contributory infringement claim, the act of state doctrine precluded the claim. *Id.* In that case, Judge Rosenthal reasoned that GSI's argument of contributory infringement necessarily required the court to determine whether an official act of the Canadian government is invalid. *Id.* at *9. GSI contends that the act of state doctrine does not apply because, under the facts alleged in the complaint, the CNSOPB is not a foreign sovereign; rather, it is an industry board whose role is to "provide 'efficient, fair and competent regulation of exploration and production activities enabling safe and responsible development of Nova Scotia's offshore petroleum resources.'" Dkt. 19 (quoting http://www.cnsopb.ns.ca/about-us/about-us).

The complaint describes the CNSOPB as a "Canadian federal/provincial regulatory board created pursuant to the Canada Nova Scotia Offshore Atlantic Accord Implementation Act, S.C. 1988, c. 28." Dkt. 1 at 7. While the court understands GSI's argument that the CNSOPB is an industry board, the plain text of the complaint makes it clear that it is a regulatory board acting on behalf of

the Canadian government.  Thus, any actions taken by the CNSOPB are acts of a foreign sovereign that the court may not rule invalid under the act of state doctrine.

In order to find contributory infringement, the court must find that the CNSOPB infringed on GSI's copyright directly or at least that the CNSOPB's mailing of documents to the United States was wrongful.  *See TGS-Nopec*, 2015 WL 6869733, at *8 ("[GSI's] argument that TGS is contributorily liable for the [CNSOPB's] direct infringement requires the court to decide whether an official act of the Canadian government is invalid.").  Thus, the court may not consider the claim under the act of state doctrine.  Conoco's motion to dismiss the contributory infringement claim pursuant to the act of state doctrine is therefore GRANTED.

Conoco contends that GSI's trade secret misappropriation claim, unjust enrichment claim, and conversion claim under the Texas Theft Liability Act must also fail pursuant to the act of state doctrine because each of these claims requires a finding that the CNSOPB did not have authority to release the GSI Seismic Materials.  Dkt. 13 at 11.  GSI does not specifically address the torts in its discussion of the act of state doctrine.  *See* Dkt. 19 at 22.

### 2.    Unjust Enrichment

For the unjust enrichment claim, GSI must show that Conoco obtained the GSI Seismic Materials from "another" by fraud, duress, or the taking of undue advantage.  *See Heidenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  There does not appear to be a requirement that the court find that the CNSOPB unlawfully provided the materials for the court to find that Conoco took undue advantage of GSI and was enriched.  The act of state doctrine therefore does not apply to the unjust enrichment claim.  Conoco's motion to dismiss the unjust enrichment claim pursuant to the act of state doctrine is therefore DENIED.

14

### 3.       Trade Secret Misappropriation

For the trade secret misappropriation claim, GSI must prove, among other things, that Conoco acquired the materials by breach of a confidential relationship "or other improper means." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).  The allegations in the complaint regarding the trade secret misappropriation claim are that Conoco "unlawfully obtained" the GSI Seismic Materials from the CNSOPB.  Dkt. 1 at 12.  Notwithstanding the allegation in its complaint that Conoco unlawfully obtained the materials, GSI argues that "improper means" can include the acquisition of trade secrets by what would otherwise be lawful means.  Dkt. 19.

The Restatement (Third) of Unfair Competition defines "improper" with regard to "improper acquisition of trade secrets" as follows:

> "Improper" means of acquiring another's trade secret under the rule stated in § 40 include theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case. Independent discovery and analysis of publicly available products or information are not improper means of acquisition.

Restatement (Third) of Unfair Competition § 43 (1995); *see also Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 637 n.74 (Tex. App.—Fort Worth 2007, pet. denied) (relying on this section of the Restatement (Third) of Unfair Competition and denying a motion for summary judgment because even though the trade secret at issue could have been acquired via lawful means such as inspection and analysis, there was a question of fact as to whether it was obtained via unfair means).  The comments acknowledge that it is "not possible to formulate a comprehensive list of the conduct that constitutes 'improper' means of acquiring a trade secret."  *Id.* cmt. c.  The examples provided include burglarizing the offices of a competitor, wiretapping the owner's telephone, and accepting a disclosure from a third party who has acquired the trade secret through improper means.  *Id.*  The

Restatement goes on to note that the "acquisition of a trade secret can be improper even if the means of acquisition are not independently wrongful." *Id.*  In such a situation, the trade secret owner must have taken "reasonable precautions against discovery of the secret by the means in question."  *Id.*

Thus, it appears that it is possible to state a claim for misappropriation of trade secrets here without violating the act of state doctrine—if Conoco's actions can be considered improper in the absence of impropriety on the CNSOPB's part.  Conoco's motion to dismiss the misappropriation of trade secret claim pursuant to the act of state doctrine is therefore DENIED.

### 4.    Conversion

The complaint alleges that Conoco violated the Texas Theft Liability Act ("TTLA") by unlawfully obtaining the materials and using or disclosing them with the intent to deprive GSI of the materials.  Dkt. 1.  Under the TTLA, a "person who commits theft is liable for the damages resulting from the theft," and "theft" means "unlawfully appropriating property or unlawfully obtaining services as described in [various sections of the] Penal Code."  Tex. Civ. Prac. & Remedies Code §§ 134.002, 134.003.  Looking at the plain language of the statute, it is not theft unless Conoco unlawfully appropriated the materials.  According to Black's Law Dictionary, "appropriation" means the "exercise of control over property; a taking of possession."  *Appropriation*, Black's Law Dictionary (9th ed. 2009).  The taking of possession of the materials was accomplished pursuant to the regulations promulgated by the CNSOPB, and the court cannot rule on whether it was unlawful to do so without violating the act of state doctrine.  Thus, the conversion claim must fail under this doctrine.  Conoco's motion to dismiss the conversion claim pursuant to the act of state doctrine is GRANTED.

C.     **Collateral Estoppel**

Conoco argues that the doctrine of collateral estoppel bars all of GSI's claims except the direct infringement claim because these claims turn on whether the acquisition of the GSI Seismic Materials was wrongful.  Dkt. 13 at 11.  GSI argues that none of the requirements of collateral estoppel are met. Dkt. 19 at 4.

The doctrine of collateral estoppel "prevents the same parties or their privies from relitigating issues that were litigated and decided in a prior action." *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 548 (5th Cir. 2013).  "Collateral estoppel prevents litigation of an issue when: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Id.* (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)).  Some cases also recognize a fourth factor, "whether there are any special circumstances that make it unfair to apply the doctrine." *Id.*

Conoco contends that the Federal Court of Canada in 2003 and the Nova Scotia Supreme Court in 2014 both considered whether the Canadian Petroleum Boards had authority to distribute seismic data and determined that it was lawful to do so.  Dkt. 13 at 12.  GSI argues that neither the Federal Court of Canada nor the Supreme Court of Nova Scotia considered whether GSI's copyright under U.S. law was violated by copying and distributing the GSI Seismic Materials.  Dkt. 19 at 4. The court agrees that the Canadian courts did not consider the issue of U.S. copyright law, but that is not Conoco's argument.  Rather, Conoco asserts that the *issue* of whether it was lawful for the CNSOPB to distribute the GSI Seismic Materials has already been litigated.  The court agrees that the Canadian courts have already determined an issue that impacts this case.  Thus, to the extent that any of the claims require a finding that it was unlawful under Canadian law for the CNSOPB to distribute the GSI Seismic Materials, those claims are precluded.  This is, however, of little

consequence because each of the claims that Conoco asserts are precluded must be dismissed under other doctrines.

**D.    Statute of Limitations**

A complaint may be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).   Conoco moves for dismissal of all claims—direct infringement, contributory infringement, and the tort claims—because they are barred by the statute of limitations.   Conoco contends that the conversion and unjust enrichment claims are barred by a two-year statute of limitations and the copyright infringement and misappropriation claims are barred by a three-year statute of limitations.   Dkt. 13 at 20.   Conoco argues that the claims actually accrued sixteen years ago, in 1999, when Conoco obtained the GSI Seismic Materials.   *Id.*   Conoco additionally notes that GSI had *actual knowledge* that Conoco had obtained the materials from the CNSOPB by December 14, 2012, yet did not file this lawsuit until September 2015.   Dkt. 13 at 21.

GSI argues that its claims are not barred by the statute of limitations because the claims did not accrue until GSI discovered the copyright and tort claims, which did not occur until GSI received the first response to its information request on December 14, 2012.   Dkt. 19.   GSI contends that the misappropriation of trade secret claim accrues when the trade secret is actually used by the defendant. *Id.*   GSI notes that the complaint mentions that GSI received some initial information indicating that GSI requested and received a response to its ATIA request some time after December 14, 2012, and that it was not until some time after September 23, 2013, that GSI received "substantially complete responses from the CNSOPB such that GSI . . . could analyze this."   *Id.*

Conoco contends that if the discovery rule applies, it only defers the accrual of the cause of action until GSI knew or, *exercising reasonable diligence*, should have known of the facts giving rise to the claims.  Dkt. 20.  Conoco contends that the fact that GSI brought a lawsuit in 2003 makes it clear that it knew that Canadian Petroleum Boards were disseminating GSI's seismic data to third parties at that time, and GSI was able to obtain the names of the companies that obtained data after the Federal Court of Canada issued its opinion in April 2003.[5]  *Id.*  Conoco thus contends that the delay between receiving this ruling and requesting the names from the CNSOPB demonstrates a lack of diligence as a matter of law.  *Id.*

### 1.      Infringement Claims

The direct and contributory copyright infringement claims are both governed by a three-year statute of limitations.  17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").  The majority of courts apply the discovery rule to toll the statute of limitations for copyright infringement claims until the plaintiff knew or through reasonable diligence should have known about the infringement.  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) (determining that the "three-year clock begins upon discovery of the infringement"); *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) (collecting cases and finding the majority of courts follow the discovery rule); *Barbour v. Head*, 178 F. Supp. 2d 758, 765 (S.D. Tex. 2001) (discussing Fifth Circuit authority and concluding that the discovery rule applies to copyright infringement claims) (citing *Daboub v.*

---

[5]  GSI objects to the court determining issues of foreign law when considering a motion to dismiss.  Dkt. 19 at 8.  However, GSI concedes in its response to the motion to dismiss that "the *2003 FCT Decision* determined that GSI had the right to submit ATIA requests to the Board.  The *2003 FCT Decision* held that [CNSOPB] could not use the pretext that its records contained information  protected by privacy as an excuse to refuse to comply with GSI's ATIA requests showing who was copying its copyrighted Seismic Materials."  *Id.* at 4–5.

*Gibbons*, 42 F.3d 285 (5th Cir. 1995) (indicating that the discovery rule likely applies to copyright infringement claims)); *see also Garden City Boxing Club, Inc. v. Johnson*, 552 F. Supp. 2d 611, 616 (N.D. Tex. 2008) (concluding that "the discovery rule is applicable to copyright infringement actions") (also relying on *Daboub*).   Here, GSI should have known about the alleged contributory infringement, which allegedly took place when the CNSOPB provided the GSI Seismic Materials to Conoco in 1999, well before it actually requested the list in 2012.  In 2003, a Canadian court held that GSI was entitled to disclosure of the names of groups that had requested the materials.  GSI provides no explanation as to why it took nine more years to "discover" that Conoco requested information in 1999 or why it took it several months after the first ATIA to conclude that Conoco requested the information.   The court therefore agrees with Conoco that the contributory infringement claim is barred by the statute of limitations.  Conoco's motion to dismiss the contributory infringement claim because it is barred by the statute of limitations is GRANTED.

The direct infringement claim is not as straightforward.  The complaint indicates that "Conoco copied and distributed the GSI Seismic Materials and made derivatives of the GSI Seismic Materials without GSI's authorization in violation of GSI's exclusive rights under 17 U.S.C. § 106."  Dkt. 1 § 46.  It does not state *when* the copying or distribution allegedly occurred.  The court cannot dismiss a claim because it is barred by the statute of limitations on a motion to dismiss unless the allegations affirmatively demonstrate that the claim is barred.  Here, it is plausible that copying or distribution occurred within three years of the complaint.   Thus, Conoco's motion to dismiss the direct infringement claim because it is barred by the statute of limitations is GRANTED IN PART AND DENIED IN PART.[6]  It is GRANTED to the extent GSI alleges direct infringement relating to importing the copies of the GSI Seismic Materials to the United States, which GSI should have,

---

[6] Conoco is of course free to reassert this argument at the summary judgment stage.

exercising reasonable diligence, known about long ago.  It is DENIED under this theory to the extent GSI's allegations can be construed to indicate that Conoco has copied, distributed, or made derivatives of the GSI Seismic Materials on or after December 12, 2009, which is three years prior to the date GSI should have known about the alleged infringement.

### 2.      Trade Secret Misappropriation Claim

The trade secret misappropriation claim is governed by a three-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.010(a) ("A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.").  The "'discovery rule' provides a 'very limited exception to [the] statute[] of limitations." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015).  "The discovery rule is applied where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 948 (S.D. Tex. 2013).  "Although the injury need not be impossible to discover, a party's failure to discover the injury, by itself, is insufficient to satisfy the requirement; 'discovery of a particular injury is dependent not solely on the nature of the injury but on circumstances in which it occurred and plaintiff's diligence as well.'" *Id.* at 949 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)).

Here, GSI alleges that "Conoco unlawfully obtained GSI's Seismic Materials from CNSOPB without GSI's authorization and thereby improperly obtained, used and/or disclosed GSI's trade secrets."  Dkt. 1 at 12.  The complaint indicates that "Conoco requested copies of GSI's Seismic Materials from CNSOPB . . . on numerous occasions in the past from 1999 through 2012." *Id.* at 8. GSI, however, specifically asserts that these occasions are reflected in the ATIA responses, and the ATIA responses appear to only contain requests from 1999 and earlier. *See* Dkt. 1, Exs. A, B.  GSI

further contends that it "did not know that Conoco requested and obtained copies of GSI's Seismic Materials from CNSOPB until on or after September 23, 2013," when it obtained the second ATIA response.  Dkt. 1.  The court finds that it is clear from the face of the complaint, which bases the trade secret misappropriation claim on Conoco's allegedly unlawfully obtaining the GSI Seismic Materials, that the materials were obtained by Conoco more than three years before the claim was filed and that, applying the discovery rule, GSI should have known by exercising reasonable diligence that Conoco had obtained these materials well before it actually submitted the information request to the CNSOPB.  Accordingly, the trade secret misappropriation claim is barred by the statute of limitations.  Conoco's motion to dismiss the trade secret misappropriation claim because it is barred by the statute of limitations is GRANTED.

.     **3.     Conversion and Unjust Enrichment**

The conversion and unjust enrichment claims are each subject to a two-year statute of limitations.  *See* Tex. Civ. Prac. & Rem. Code § 16.003; *Verizon Employee Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644, 647 (N.D. Tex. 2008), *aff'd* 326 F. App'x 858 (5th Cir. 2009) (unjust enrichment); *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 498 (Tex. App.—Corpus Christi 1999, no pet.) (conversion).  Conoco asserts that GSI's complaint demonstrates that it had actual knowledge that Conoco had obtained the GSI Seismic Materials from the CNSOPB by December 14, 2012, yet it did not file suit until September 22, 2015, and that the claims that have a two-year statute of limitations therefore are barred.  GSI contends that it was unable to fully analyze the data until some time after September 23, 2013, which is two years prior to the date GSI filed this lawsuit—September 22, 2015.  *See* Dkt. 1; Dkt. 19.  The court, however, does not find it plausible that it took nine months to analyze the documents obtained from the CNSOPB—which were not voluminous—and determine that Conoco had requested trademark-protected materials.  The court

22

finds that with reasonable diligence GSI should have been able to discover the alleged infringement (1) by requesting information from the CNSOPB regarding companies that had obtained the materials soon after receiving the ruling allowing it do to so in 2003; and (2) at any rate determined that Conoco had requested the materials sooner than nine months after receiving the information. Accordingly, the conversion and unjust enrichment claims cannot stand because they are both barred by the two-year statute of limitations. Conoco's motion to dismiss the conversion and unjust enrichment claims is GRANTED.

### E.  Standing

Conoco moves, in the alternative, for dismissal because GSI lacks standing to allege its claims. Dkt. 13. Conoco contends that GSI was not formed until 2013 and that it fails to allege in its complaint how it became to owner of the GSI Seismic Materials. Dkt. 13 at 23–24. GSI asserts that it is the owner by assignment but that it need not plead that fact. Dkt. 19.

The complaint alleges that "GSI is the owner of the seismic survey data that was created, recorded and processed around the offshore Newfoundland and Labrador, Canada area in the Atlantic Ocean" for the following two surveys: East Coast 1972 and Nova Scotia 1984. Dkt. 1 ¶ 19. Conoco contends that this statement of ownership is conclusory and that GSI needed to be more specific regarding how it acquired ownership of the GSI Seismic Materials. Dkt 13. The court finds, however, especially given the fact that the GSI Seismic Materials were created by an entity also named GSI, that the allegation of ownership is plausible and not conclusory. Conoco's motion to dismiss for lack of standing is DENIED.

### F.  Rule 12(b)(6)

Conoco contends that GSI fails to state a claim for which relief can be granted for its direct infringement claim because the complaint's description of this claim lacks the specificity needed to

satisfy the federal pleading standard.  Dkt. 20.  Conoco asserts that the claim fails the plausibility standard because "GSI offers nothing more than the mere allegation that Conoco[] copied, distributed, and made derivatives of the [GSI] Seismic Material."  *Id.*  Conoco notes that GSI "fails to identify what was copied, when it was copied, to whom it was distributed, and what, if anything, is derivative of any copyrighted work."  *Id.*  It is not necessary, however, for GSI to identify what, when, and to whom, to satisfy the general federal pleading standard under Rule 12(b)(6).[7]  Instead, the complaint must state a claim that is plausible.

To state a claim for direct copyright infringement, a plaintiff must allege (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are copyrightable.  *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).  The complaint states, specifically, that GSI owns the copyright and that "Conoco copied and distributed the GSI Seismic Materials and made derivatives of the GSI Seismic Materials without GSI's authorization in violation of GSI's exclusive rights under 17 U.S.C. § 106."  Dkt. 1 at 10.  These allegations indicate that there is a "possibility that defendant acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  Of course, the plausibility test requires more than a possibility.  *See id.*  The portion of the direct infringement claim related to the original importation of the copies is barred by the statute of limitations, so the only portion of the claim remaining relates to potential copying, distributing, and making derivatives in the three years prior to the date GSI should have known Conoco acquired the GSI Seismic Materials—the date of the first response to the first ATIA request, December 14, 2012.  However, there is not enough

---

[7] If heightened pleading pursuant to Federal Rule of Civil Procedure 9(b) were required, then GSI would be required to plead who, what, when, where, and how.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  There is not a heightened pleading standard for copyright infringement claims.  *See Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 964 (N.D. Tex. 2006) ("[M]ost causes of action, including copyright infringement claims, must satisfy only the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8.").

context in the complaint for the court to conclude that it is plausible that Conoco would still be copying, distributing, and making derivatives of GSI Seismic Data almost a decade after it acquired the materials.  *See id.* ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *see also TGS-Nopec*, 2015 WL 6869733, at *6 (dismissing the direct infringement claim as "conclusory and speculative").  Conoco's motion to dismiss the direct infringement claim for failure to state a claim under Rule 12(b)(6) is GRANTED.

**G.     GSI's Alternative Motion to Stay**

GSI requests, in the alternative, that the court stay this case pending a decision from the Court of the Queen's Bench of Alberta, Canada that GSI contends could influence the outcome of this case. Dkt 19 at 1.  The Court of the Queen's Bench of Alberta, Canada, issued the relevant judgment on April 21, 2016.  *See* Dkt. 26, Ex. 1.  The court concluded that "Parliament's purpose and intention when it enacted the [Canadian Petroleum Resources Act, RSC 1985, c36 (2nd Supp)] was to allow public disclosure of seismic data after a period of time to allow for necessary oil and gas exploration of the Canadian offshore and frontier lands."  *Id.* at 61.  The court further noted that "GSI was fully aware that some of its data would have to be submitted and that it would be made public when it undertook its work on these offshore and frontier lands."  *Id.*  It noted that "[f]or the oil companies, [the regulatory regime] established that there is nothing unlawful about accessing or copying the information from the Boards."  *Id.*  Because the Canadian decision upon which GSI urged the court to wait has been issued, GSI's motion to stay is DENIED AS MOOT.

## IV. CONCLUSION

Conoco's motion to dismiss is GRANTED.   All of GSI's claims against Conoco are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on May 13, 2016.

_____
Gray H. Miller
United States District Judge