# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GEOPHYSICAL SERVICE INCORPORATED | § | CASE NO. 4:15-CV-02766 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF GEOPHYSICAL SERVICE INCORPORATED'S MOTION FOR RECONSIDERATION AND MOTION FOR LEAVE TO AMEND**

DATED: June 10, 2016

**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP PLLC**
Joel B. Rothman
joel.rothman@sriplaw.com
4651 North Federal Highway
Boca Raton, FL 33431

**PREBEG FAUCETT & ABBOTT, PLLC**
Matthew J.M. Prebeg
mprebeg@PFALAWFIRM.COM
Brent Caldwell
bcaldwell@PFALAWFIRM.COM
8441 Gulf Freeway, Suite 307
Houston, TX 77017

**ATTORNEYS FOR PLAINTIFF GEOPHYSICAL SERVICE INCORPORATED**

**Table of Contents**

| I. | SUMMARY OF THE REASONS FOR RECONSIDERATION ................................................. 1 |
| II. | RECONSIDERATION IS JUSTIFIED UNDER RULE 59(e) ....................................................... 3 |
| III. | LEAVE TO AMEND SHOULD BE GRANTED PURSUANT TO RULE 15(a) ........................ 3 |
| IV. | THE STATUTE OF LIMITATIONS WAS TOLLED UNTIL DECEMBER 14, 2012 ............... 4 |
|  | A. From 2003 to 2012 the Petroleum Boards and Conoco Withheld Evidence of Conoco's Infringement. ............................................................................................................................ 4 |
|  | B. CNSOPB's History of Obstruction and Refusals to Comply with GSI's Requests ................ 5 |
|  | C. Conoco's History of Concealment ........................................................................................ 8 |
|  | D. GSI has suffered infringement on a massive scale. ............................................................... 9 |
| V. | LEAVE TO AMEND SHOULD BE GRANTED ....................................................................... 9 |
| VI. | CONCLUSION ........................................................................................................................... 11 |

## Table of Authorities

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................................................. 3

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ........................................... 4

*Electrostim Med. Servs. v. Health Care Serv. Corp.*, 614 F. App'x 731, 736 (5th Cir. 2015) ........ 4

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) .................................................................................................................................................. 10

*In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) ...................................................... 3

*Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) ......................................... 4

*Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir. 1996) ............................................................................ 4

*PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 105 F.3d 656, 656 (5th Cir. 1996) .................... 4

*Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338, 341 (5th Cir. 1971) ............................................ 4

*Price v. Pinnacle Brands*, 138 F.3d 602, 608 (5th Cir. 1998). ..................................................... 10

*QT Trading, LP v. M/V Saga Morus*, 2010 U.S. Dist. LEXIS 61872, 3, 2010 WL 2573206 (S.D. Tex. June 22, 2010) ..................................................................................................................... 3

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) ........................................... 4

*Templet v. Hydrochem Inc*., 367 F3d 473, 478-479 (5th Cir 2004) ................................................ 3

*Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) ..................................................... 3

*Warren Freedenfeld Assoc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) ...................................... 9

*Williams v. Home Depot USA, Inc.*, 2012 U.S. Dist. LEXIS 44800, 7 (S.D. Tex. Mar. 30, 2012)  3

**Statutes**

17 U.S.C. § 106(3) ........................................................................................................................ 12

17 U.S.C. § 602(a) ........................................................................................................................ 12

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................... 4

Fed. R. Civ. P. 59(e) ................................................................................................................... 1, 4

**Other Authorities**

*2003 FCT Decision* ......................................................................................................................... 6

*Geophysical Serv. Inc. v. CNOPB,* 2003 FCT 507 (Fed. Ct. Canada 2003) .............................. 2, 6

*Geophysical Service Incorporated v. Encana Corporation*, et al., 2016 ABQB 230 .................... 7

I.     SUMMARY OF THE REASONS FOR RECONSIDERATION

This motion is respectfully made pursuant to Fed. R. Civ. P. 59(e) to correct the manifest errors of fact in the Memorandum Opinion & Order entered at Dkt. 27 (the "Opinion") and pursuant to Fed. R. Civ. P. 15(a) to amend the Complaint to demonstrate factually and plausibly that the claims asserted by Geophysical Services Incorporated ("GSI") in Count I (Direct Copyright Infringement) and Count IV (Trade Secrets Misappropriation)[1] are not barred by the statute of limitations.

The Opinion erroneously concluded that GSI knew or should have known that ConocoPhillips Company ("Conoco") imported copies of GSI's seismic works "a long time ago" and many years before GSI requested the Petroleum Board respond to GSI's Access to Information Act requests in 2012. As demonstrated below, this conclusion was incorrect and not based upon fact. GSI did not know and could not have known that Conoco infringed before 2012 because Conoco and the Petroleum Boards withheld the details of Conoco's infringement from GSI until 2012. As a result, GSI did not have sufficient facts upon which to sue Conoco until the period three years prior to the filing of this action.

The Court summarized the facts that led to its conclusion that GSI knew or should have known about the infringement as follows:

> In 2003, a Canadian court held that GSI was entitled to disclosure of the names of groups that had requested the materials. GSI provides no explanation as to why it

---

[1] GSI does not move for reconsideration of this Court's Dismissal of Count II (Contributory Copyright Infringement) because the Court based its decision upon two separate and independent reasons, the act of state doctrine (Dkt. 1 at 13-14) and the statute of limitations (Dkt. 1 at 19-20). If the Court had dismissed this claim based upon the statute of limitations alone, as with the remaining claims, then GSI would have sought reconsideration as to Count II as well. However, unlike the dismissal of Counts I and III that were based upon the Court's erroneous belief that GSI knew or should have known about facts that would have begun the statute of limitation clock ticking on these claims, and while GSI respectfully disagrees with the Court's decision on the act of state doctrine, GSI cannot identify any incorrect factual conclusions or errors of law with respect to the application of the act of state doctrine.

For the reasons set forth in Section V below, GSI is not seeking leave to amend Count III (Unjust Enrichment) and Count V (Texas Theft Liability Act – Misappropriation of Trade Secrets and/or Conversion/Theft of Property) which have two year statutes of limitations.

> took nine more years to "discover" that Conoco requested information in 1999 or why it took it several months after the first ATIA to conclude that Conoco requested the information. The court therefore agrees with Conoco that the contributory infringement claim is barred by the statute of limitations.
>
> The direct infringement claim is not as straightforward. The complaint indicates that "Conoco copied and distributed the GSI Seismic Materials and made derivatives of the GSI Seismic Materials without GSI's authorization in violation of GSI's exclusive rights under 17 U.S.C. § 106." Dkt. 1 § 46. It does not state when the copying or distribution allegedly occurred. The court cannot dismiss a claim because it is barred by the statute of limitations on a motion to dismiss unless the allegations affirmatively demonstrate that the claim is barred. Here, it is plausible that copying or distribution occurred within three years of the complaint. Thus, Conoco's motion to dismiss the direct infringement claim because it is barred by the statute of limitations is GRANTED IN PART AND DENIED IN PART. It is GRANTED to the extent GSI alleges direct infringement relating to importing the copies of the GSI Seismic Materials to the United States, which GSI should have, exercising reasonable diligence, known about long ago. It is DENIED under this theory to the extent GSI's allegations can be construed to indicate that Conoco has copied, distributed, or made derivatives of the GSI Seismic Materials on or after December 12, 2009, which is three years prior to the date GSI should have known about the alleged infringement prior to September 22, 2015 when this suit was filed.

(Dkt. 27 at 20-21).

This Court's conclusion that "GSI should have, exercising reasonable diligence, known about [Conoco's importation of its seismic materials] long ago" was manifestly erroneous. This Court's incorrect conclusion stemmed from its interpretation of the decision in *Geophysical Serv. Inc. v. CNOPB,* 2003 FCT 507 (Fed. Ct. Canada 2003) (the "*2003 FCT Decision,*" Dkt. 13-2), which was filed by Conoco in support of its Motion to Dismiss, and which the Court took judicial notice of in its Decision. (Dkt. 27 at 2, fn.1).

Apparently, the Court believed, mistakenly, that after the *2003 FCT Decision* was issued, GSI had immediate access to information and documents showing that Conoco had requested and obtained copies of GSI's seismic materials. Nothing could be further from the truth. Since the early 2000's, GSI has spent millions of dollars in legal fees in an effort to obtain information from Canadian petroleum boards to identify copyright infringers and pursue claims against them,

2

but it was not until 2012 that the boards actually began to respond. Meanwhile, during that time Conoco concealed its infringement and refused to disclose the details to GSI. It was not until the period three years prior to the filing of this case that GSI had obtained sufficient information from CNSOPB to sue Conoco for infringement.

GSI can plausibly allege facts demonstrating concealment that entitle it to tolling of the applicable limitations periods. Attached is a proposed amended complaint setting forth these allegations. GSI's claims are plausible, and not speculative, and comply with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Reconsideration is warranted. Upon reconsideration this Court should vacate its decision and grant GSI leave to amend.

## II.     RECONSIDERATION IS JUSTIFIED UNDER RULE 59(e)

"Motions for reconsideration generally are brought under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure." *QT Trading, LP v. M/V Saga Morus*, 2010 U.S. Dist. LEXIS 61872, 3, 2010 WL 2573206 (S.D. Tex. June 22, 2010). "Whether a motion is considered under Rule 59(e) or Rule 60(b) depends on when it is filed." *Williams v. Home Depot USA, Inc.*, 2012 U.S. Dist. LEXIS 44800, 7 (S.D. Tex. Mar. 30, 2012). A motion for reconsideration filed within 28 days of entry of the judgment or order is properly considered under Rule 59(e). *Id.*

A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). "Rule 59(e) 'serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet v. Hydrochem Inc.*, 367 F3d 473, 478-479 (5th Cir 2004), quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

## III.    LEAVE TO AMEND SHOULD BE GRANTED PURSUANT TO RULE 15(a)

A district court has discretion whether to grant a motion for leave to amend, but that discretion is limited because under Fed. R. Civ. P. 15(a)(2) a district court "should freely give leave [to amend] when justice so requires." *Electrostim Med. Servs. v. Health Care Serv. Corp.*,

3

614 F. App'x 731, 736 (5th Cir. 2015). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)(internal quotation marks omitted). "A district court must possess a substantial reason to deny a request for leave to amend[.]" *Id*. (internal quotation marks omitted). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)(holding that a district court erred in denying leave to amend where amendment would not be futile, the plaintiff did not unduly delay, there were not repeated failures to cure the deficiency, and no prejudice would result to the opposing party).

### IV. THE STATUTE OF LIMITATIONS WAS TOLLED UNTIL DECEMBER 14, 2012

A copyright claim does not accrue until the "plaintiff is on inquiry that it has a potential claim." *Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338, 341 (5th Cir. 1971)(internal quotation marks omitted). A cause of action for copyright infringement accrues when a party "has knowledge of the violation or notice of facts that, in the exercise of due diligence, would have led to such knowledge." *PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 105 F.3d 656, 656 (5th Cir. 1996)(unpublished); *see also Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir. 1996) ("A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised."); *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994) (holding a cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge).

### A. From 2003 to 2012 the Petroleum Boards and Conoco Withheld Evidence of Conoco's Infringement.

The *2003 FCT Decision* was only a preliminary step in the process of obtaining the information necessary to file this and other lawsuits for infringement and other violations of GSI's intellectual property rights. The *2003 FCT Decision* held that CNLOPB could not use the

4

pretext that its records contained information protected by privacy as an excuse to refuse to comply with GSI's ATIA requests showing who was copying its copyrighted Seismic Materials. The *2003 FCT Decision* did not order CNLOPB to release its records to GSI. Rather, all it determined was that GSI could ask for the records and that CNLOPB could not withhold them based upon privacy.

This Court appears to have assumed, incorrectly, that the only reason why CNLOPB did not release its records to GSI was privacy concerns, and so therefore immediately after the *2003 FCT Decision* was handed down the records were released. That did not happen. After the *2003 FCT Decision* was issued, GSI made hundreds of requests to CNSOPB and other Canadian petroleum boards for information regarding their release of GSI's seismic works, many of which have still not been responded to even today. Instead, CNLOPB refused to produce its records to GSI for other reasons or, in some cases, for no reasons at all. Meanwhile, GSI went directly to its Conoco and asked Conoco directly whether it had obtained copied from CNLOPB and other Petroleum Boards without GSI's permission. But Conoco refused to respond. In fact, it took ten more years after the *2003 FCT Decision* for GSI to finally obtain records from the Petroleum Boards that were sufficiently specific enough to permit GSI to file this case.

B.     **CNSOPB's History of Obstruction and Refusals to Comply with GSI's Requests**

Attached hereto as Exhibit 1 is the Affidavit of Harold Paul Einarsson sworn to on July 13, 2015, and filed in Common Issues Trial held in the Court of Queen's Bench of Alberta before Madame Justice Kristine Eidsvik that resulted in the decision in *Geophysical Service Incorporated v. Encana Corporation*, et al., 2016 ABQB 230 (Dkt. 26-2).

Mr. Einarsson's affidavit sets forth a detailed history of GSI's knowledge and lack of knowledge regarding infringement of its rights to its seismic materials. Mr. Einarsson's testimony demonstrates that in the 1990's GSI had no reason to believe that any infringement

was occurring. GSI had only submitted seismic materials in paper or mylar, formats that GSI believed made infringement unlikely.

>   41. When I became actively involved with GSI in 1993/1994, I understood that GSI had full intellectual property rights in its Seismic Materials and that the Boards were only permitting viewing of filed GSI Seismic Materials, then consisting of only paper or mylar reproductions of seismic sections. Although I was concerned even then about the viewing of the seismic sections, my concerns were limited for various reasons. First, given that the Seismic Materials were in paper/mylar format, the opportunity for viewing and access was limited. Second, I understood that the Boards were complying with Canadian laws and were not copying or permitting copying of the Seismic Materials. Third, the notices contained on the Seismic Materials would alert persons viewing the Materials of GSI property rights. Fourth, I received various assurances from members of the Boards that they were respecting GSI's property rights in the Materials. Fifth, industry codes of conduct, as detailed further below, protected seismic data against unauthorized use. Based on the assurances given by the Boards in the circumstances referenced, GSI continued to invest hundreds of millions of dollars in the creation maintenance, processing, and reprocessing of seismic data. At this point in time, and before, GSI did not envisage the technology changes that have occurred which impact the ability and ease with which seismic data can be reproduced, scanned, vectorized and disseminated. Certainly GSI did not envisage that government bodies would later take the position that after the expiry of privilege periods, the very ownership of seismic data and its associated intellectual property rights, would revert to the government. Nothing in the legislation or permitting process provided grounds for such a position and certainly the Boards made no mention of it until well after the fact.

Circumstances changed in the early 2000's when the petroleum boards told GSI that they wanted to obtain or make digital copies of GSI's seismic materials. This was an alarming development. Digital files can be easily copied and their infringement would be almost impossible to detect. Efforts to stop the petroleum boards from converting GSI's copyrighted works spanned the decade of the 2000's. During the latter part of the decade, the petroleum boards advised GSI that its seismic materials would be protected until an agreement could be reached to restrict disclosures.

>   42. In the early 2000s, the Boards advised that they wished to obtain or make digital copies of existing paper/mylar seismic sections for archival purposes in JPEG, TIFF or PDF file types. At that time I became involved in industry efforts with the International Association of Geophysical Contractors ("IAGC"), the Society of Exploration Geophysicists ("CSEG") the Canadian Association of

6

Geophysical Contractors ("CAGC") and the Canadian Association of Petroleum Producers ("CAPP") to negotiate with the Boards regarding their desire to move from paper to digital image formats. Industry members, including GSI were concerned, even alarmed, about the move to a digital format due to the expansion of technology (scanning and vectorising), combined with the practice of the Boards to loan out the paper/mylar/microfiche seismic materials to third parties, and were seeking protection of their intellectual property rights. Our discussions with the government and Boards extended over several years. Attached hereto as Exhibit "27" is a copy of a position paper provided to the CNLOPB and the CNSOPB in the year 2000. This was the starting point for discussions. Attached hereto as Exhibit "28" is a copy of correspondence from GSI to the CNSOPB that reflects the state of ongoing discussions as at 2007. It is key to note the concerns GSI expressed in Clause 2 and Clause 4 regarding the undermining of investment, contractual arrangements, and the non-exclusive business model which turned out to be valid. Over the course of the discussions, we were negotiating to have the Boards require persons accessing seismic materials to enter into confidentiality or license agreements with the seismic data owners. I was involved in drafting an industry confidentiality agreement for this purpose. Attached hereto as Exhibit "29" is a copy of the draft confidentiality agreement created by the industry committee. In the course of these negotiations I was assured by Board members and representatives of the federal government that the Boards were only acting as libraries for the seismic data; they would continue to respect the rights of seismic data owners; and that at no time would they require seismic companies such as GSI to submit or disclose digital field data tapes or processed data formatted tapes (SEGY) to the Boards. In or about late 2007, negotiations broke off for reasons unknown to me. Over the course of approximately 1993-2007, GSI was led to believe that its intellectual property rights in its seismic data would be protected by the government boards and that until an agreement could be reached with seismic companies, the boards would restrict disclosure of seismic data in order to respect the property rights of seismic companies, including GSI. At no time in this period did any official from government or from the Boards communicate to me that due to the conduct of GSI's predecessors GSI had waived all or any of intellectual property rights in its Seismic Materials. To my knowledge, this position only was expressed after the commencement of litigation by GSI after 2010.

Prior to 2012, GSI believed the petroleum boards that its seismic data was only being

viewed and borrowed for viewing.  However, we now know that to be false.

43. Later I learned that the Boards simply proceeded with the conversion of the seismic data from paper/mylar formats to digital image formats (TIF, JPG, PDF) unilaterally despite years of negotiations with industry, and no consensus being reached for non-exclusive data. Until GSI discovered otherwise in or about 2012, other than creating microfiche, GSI believed seismic data as filed with the Boards, was not being scanned, vectorized or digitally read or distributed by Boards and government agencies. Due to a lack of any evidence despite many attempts via access to information requests and otherwise, until 2012, GSI only had evidence

7

that GSI's seismic data was only being viewed and borrowed for viewing, nothing more. At the time of submission of seismic data to the Boards in paper/mylar format, GSI's predecessor and GSI, could not have predicted how the technology would change to expand disclosure and use of those disclosures, nor how the governments' interpretation of "disclosure" and "data" would change, to allow for 20 anything other than regulatory purposes such as internal government use, and basic viewing of originally submitted data in paper or mylar form.

Attached hereto as Exhibit 2 is the Declaration of Paul Einarsson that attaches a list of eighty (80) separate requests issued by GSI to CNSOPB and other Canadian authorities pursuant to the applicable Access to Information and Protection of Privacy Acts (ATIA) that **as of May 2, 2016** were still open and had either not been responded to at all, or the response received was incomplete. The requests that relate to the disclosure of GSI's seismic works to Conoco (and the defendants in GSI's other cases filed in federal court in Texas) are among those that remain incomplete. Mr. Einarsson's Declaration affirms that since the early 2000's, GSI has spent millions of dollars in legal fees in an effort to obtain information from Canadian petroleum boards to identify copyright infringers and pursue claims against them. However, it was not until 2012 that the boards actually began to respond, but their responses have been incomplete and in many cases are still incomplete.

## C. Conoco's History of Concealment

Conoco concealed its infringement and refused to disclose the details of its infringement to GSI. Attached to the Einarsson Declaration is correspondence exchanged between GSI and Conoco from August of 2011 through November of 2013. Throughout this correspondence GSI requested Conoco disclose the details of the GSI seismic materials and data that Conoco obtained from Canadian petroleum boards without notifying GSI and permit GSI to audit Conoco's records to obtain this information pursuant to the Master Data Licensing Agreement between GSI and Conoco. As the correspondence between the parties demonstrates, Conoco refused to cooperate and has continued to refuse to date.

8

## D. GSI has suffered infringement on a massive scale.

The Einarsson Declaration attaches a list of the lawsuits GSI has been forced to file throughout Canada and in the United States since 2011 to address the infringement it has discovered and continues to discover. GSI has filed lawsuits as quickly as possible after receiving information regarding infringements that allow GSI to identify the infringer and the work infringed. Determining who to sue, what was copied and when has required GSI to review thousands of pages of disclosures, analyze the activities reflected in documents produced by petroleum boards that are often heavily redacted, and identify the violations of GSI's intellectual property rights where possible. This process has often been like trying to find a needle in a haystack. Notwithstanding these difficulties, GSI has acted diligently. As Mr. Einarsson attests, in this case it was not until within three years prior to the filing of this case that GSI obtained sufficient information to sue Conoco for infringement.

## V. LEAVE TO AMEND SHOULD BE GRANTED

Attached hereto as Exhibit 3 is GSI's proposed Amended Complaint. GSI's proposed Amended Complaint alleges that GSI did not know and could not have known sufficient details of Conoco's infringement in order to sue Conoco until GSI received the ATIA responses from CNLOPB within three years prior to the filing of this action. GSI did not have knowledge of the violation or sufficient facts to file this case until December 14, 2012 at the earliest, which is less than three years before this case was filed.

"In the absence of actual knowledge…the question becomes when a reasonably prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement." *Warren Freedenfeld Assoc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008)(On appeal from the district court's grant of a Rule 12(b)(6) motion based upon the district court belief that the plaintiff's claimed lack of knowledge was not plausible, the First Circuit conducted "[a] searching examination of the complaint and the documents annexed thereto [but

9

found] not facts…sufficient to mandate a conclusion that a reasonable person would have suspected that the copyrighted material had been used in an unauthorized manner.")

"In deciding whether to allow amendment, a district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Price v. Pinnacle Brands*, 138 F.3d 602, 608 (5th Cir. 1998). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002).

The proposed Amended Complaint cures any deficiencies in the original complaint that led this Court to conclude that GSI's equitable tolling argument was not plausible. GSI alleges that GSI did not know and could not have known about Conoco's requests for copies of GSI's Seismic Materials, and the release of GSI's Seismic Materials by CNSOPB, because until December 14, 2012 CNSOPB refused GSI's information requests for the names and addresses of third parties who were given access by CNSOPB to GSI's Seismic Materials, as well as the identification of the specific GSI Seismic Materials accessed. GSI also alleges that it made numerous requests directly to Conoco to obtain information regarding the GSI Seismic Materials that Conoco had obtained and copied from CNSOPB, but that Conoco concealed its actions from GSI and consistently refused to provide GSI with the information requested. GSI's Amended Complaint also makes clear that its copyright infringement claim relates to Conoco's importing GSI Seismic Materials in violation of GSI's exclusive distribution right in 17 U.S.C. § 106(3) as applied to importation by 17 U.S.C. § 602(a).

GSI also alleges that it has worked as quickly as possible after receiving information

regarding infringements that allow GSI to identify the infringer and the work infringed to file this and other lawsuits in Canada and the United States. Determining who to sue, what was copied and when has required GSI to review thousands of pages of disclosures, analyze the activities reflected in documents produced by petroleum boards that are often heavily redacted, and identify the violations of GSI's intellectual property rights where possible.[2] Notwithstanding these difficulties, GSI has acted diligently in this case.

## VI.   CONCLUSION

For all the foregoing reasons, GSI's Motion for Reconsideration and Motion for Leave to Amend should be granted.

DATED: June 10, 2016

Respectfully submitted,

**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP PLLC**

*/s/ Joel B. Rothman*
Joel B. Rothman
Fed Bar No. 2310207
joel.rothman@sriplaw.com
4651 North Federal Highway
Boca Raton, FL 33431
561-404-4350 (main)
561-404-4353 (fax)

-and-

Matthew J.M. Prebeg
Texas State Bar No. 00791465

---

[2] GSI believes that it can demonstrate due diligence in bringing its claims in Count III (Unjust Enrichment) and Count V (Texas Theft Liability Act – Misappropriation of Trade Secrets and/or Conversion/Theft of Property) within two years, but GSI has not alleged these claims in the proposed amended complaint for reasons unrelated to this Court's statute of limitations dismissal. Among other reasons, these claims duplicate the relief available under GSI's claims for copyright infringement and trade secrets misappropriation. Furthermore, the decision of Madame Justice Kristine Eidsvik in *Geophysical Service Incorporated v. Encana Corporation*, et al., 2016 ABQB 230 (Dkt. 26-2) issued after the complaint was filed in this case held that GSI's Seismic Materials are entitled to copyright protection in Canada, making a finding of copyrightability in this case far more likely. These reasons and others led GSI to propose a more streamlined amended complaint.

11

        Southern District Bar No. 603742
        mprebeg@pfalawfirm.com
        Brent Caldwell
        Texas State Bar No. 24056971
        Southern District Bar No. 827326
        bcaldwell@pfalawfirm.com
        **PREBEG FAUCETT & ABBOTT, PLLC**
        8441 Gulf Freeway, Suite 307
        Houston, TX  77017
        832-742-9260 (main)
        832-742-9261 (fax)

        **ATTORNEYS FOR PLAINTIFF**
        **GEOPHYSICAL SERVICES**
        **INCORPORATED**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2016, a true and correct copy of the above and foregoing was filed using the Court's Electronic Filing System and that service on known Filing Users noted below will be accomplished through electronic transmission.

>  */s/ Joel B. Rothman*
> Joel B. Rothman

REED SMITH LLP
Julie A. Hardin
jhardin@reedsmith.com
Nicole S. Soussan
nsoussan@reedsmith.com
811 Main Street, Suite 1700
Houston, TX 77002-6110
Tel. 713.469.3886
Fax 713.469.3899